946 F.2d 895
 60 USLW 3569
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ardell KIDWELL, and R. David Masciola,
Plaintiffs-Appellants, Cross-Appellee,
v.
WAKEFIELD PROPERTIES, INC., and Indianhead Ski Corporation,
Defendants-Appellees, Cross-Appellants,
Indianhead Mountain Resort, Inc. and Ronald E. Vincent, Defendants.
 Nos. 90-2142 to 90-2145.
 United States Court of Appeals, Sixth Circuit.
 Oct. 16, 1991.
 
 Before KENNEDY and DAVID A. NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs Ardell Kidwell and R. David Masciola appeal the District Court's grant of summary judgment for defendants Wakefield Properties, Inc. and Indianhead Ski Corporation. Plaintiffs claim that the defendants are liable for ski injuries suffered during a ski race when the plaintiffs, in separate incidents, collided with one of two poles demarcating the finish line. The District Court dismissed the claims on summary judgment holding that, as a matter of law, the claims were barred by the Michigan Ski Area Safety Act, Mich.Comp.Laws Ann. § 408.321 et seq. The District Court also ruled that the plaintiffs' claims were not barred by the various releases and waivers they had signed prior to the race events. The defendants cross-appeal arguing that the District Court should have found these waivers to be a basis for summary judgment. We find that the summary judgment based on the Michigan Ski Area Safety Act was properly granted and AFFIRM the judgment of the District Court. We do not reach the issues raised by the cross-appeal.
 
 I.
 
 2
 The plaintiffs, Ardell Kidwell and David Masciola, were both injured during an alpine ski racing event on March 16, 1986 at the Indianhead Ski Area in Ironwood, Michigan. The plaintiffs, residents of Illinois, were at Indianhead to participate in a weekend of amateur racing. Both plaintiffs were members of clubs associated with the Chicago Metropolitan Ski Council. The plaintiffs were experienced skiers and amateur racers.
 
 
 3
 The finish line on the hill being used for the races, FIS hill, was marked with two permanently placed poles. Usually the poles supported a banner and the racers would pass between the poles at the end of each race. Directly behind the poles was an electronic light beam which timed the finishes of all the participants. This information was transferred electronically into a trailer which housed the timekeepers.
 
 
 4
 The injuries of Kidwell and Masciola were caused when they collided with the finish line poles. Masciola lost control when he encountered a compression just before reaching the finish line. While off balance, Masciola hooked his ski on the pole on the right of the finish line, tripped, and suffered a serious injury to his knee. Kidwell lost control when she encountered the same compression, fell, and also skidded into the right pole. Both skiers had skied the hill several times and were aware of the permanently affixed poles.
 
 
 5
 Plaintiffs filed separate complaints alleging that the defendants were negligent in the operation of Indianhead, in controlling the downhill course, in guarding the poles with fences or by other means, and in failing to warn. Defendants answered the complaint and raised several affirmative defenses including (1) that the defendants are immune from suit under the Michigan Ski Area Safety Act ("Act"), and (2) that the plaintiffs' claims are barred in whole or in part by various waivers and releases signed prior to the race. The trial court consolidated the cases. The defendants filed a motion for summary judgment. The District Court denied the motion on the basis of the releases and waivers but granted the motion under the Act.
 
 II.
 
 6
 We review a grant of summary judgment de novo. McKee v. Cutter Laboratories, Inc., 866 F.2d 219, 220 (6th Cir.1989); Storer Communications, Inc. v. National Ass'n of Broadcast Employees & Technicians, 854 F.2d 144, 146 (6th Cir.1988). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 
 7
 The Michigan Ski Area Safety Act, Mich.Comp.Laws Ann. § 408.342(2) provides in part,
 
 
 8
 Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.
 
 
 9
 The District Court found that the compression that caused the plaintiffs' falls was part of the "natural terrain." The court also held that the poles were a "obvious and necessary" danger. The fact that such equipment was not specifically listed in the statute was acceptable under the "including, but not limited to" language. Joint App. at 112.
 
 
 10
 The Michigan Court of Appeals has decided two cases under the statute. In Grieb v. Alpine Valley Ski Area, Inc., 155 Mich.App. 484, 400 N.W.2d 653 (1986), the court addressed a case where one skier made a claim based on injuries suffered when he was struck from behind by another skier. The court found that the plaintiff's injury was covered by the language of the statute and was the result of a clear and obvious danger. In a second case, Schmitz v. Cannonsburg Skiing Corp., 170 Mich.App. 692. 428 N.W.2d 742 (1988), a skier had died from injuries he received from colliding with a tree growing in the middle of the ski slope. The court affirmed the trial court's grant of a summary judgment motion in favor of the defendants based on the Act. The court held,
 
 
 11
 Significantly, the list of "obvious and necessary" risks assumed by a skier under the statute involves those things resulting from natural phenomena, such as snow conditions or the terrain itself; natural obstacles, such as trees and rocks; and types of equipment that are inherent parts of a ski area, such as lift towers and other such structures or snow-making or grooming equipment when properly marked.
 
 
 12
 170 Mich.App. at 696.
 
 
 13
 Under the Act, and the interpretation given the Act by the Michigan Court of Appeals, a skier accepts the risk of his or her activity, including collisions with various objects, as long as the danger inherent in those objects is both "obvious and necessary." There is no question that the poles demarcating the finish lines were obvious. They were covered with bright red padding and red flags stood directly in front of the poles. Both plaintiffs admit noticing the poles during the previous day's skiing. The question of whether the poles were "necessary" is slightly more troubling.[1] Although it is clear that some type of physical object was necessary to mark the finish line, plaintiffs argue that the permanently affixed poles were not necessary and that other means of marking the finish could have been used.
 
 
 14
 The Act was designed to reduce the liability of ski area operators by making skiers liable for obvious risks of harm from skiing and to encourage skiers to accept responsibility for their safety. Schmitz, 170 Mich.App. at 695. We do not think that the statute intended to place responsibility on the ski area operators to determine which ski equipment is the least risky and to only use that equipment. Such a responsibility would have been parallel to requiring the defendant in Schmitz to have removed the tree from the slope. It would be difficult to argue that a tree in the skier's path was "necessary" for skiing on the slope. This is clearly not the intention of the statute. It was intended to limit the liability of ski resort operators. If a structure serves some purpose or function with respect to skiing and is similar to those listed, it meets the "necessary" requirement. As the court in Schmitz found,
 
 
 15
 it is logical to construe this section of the statute as an assumption of the risk clause that renders the reasonableness of the skiers' or the ski area operator's behavior irrelevant. By the mere act of skiing, the skier accepts the risk that he may be injured in a manner described in the statute.
 
 
 16
 170 Mich.App. at 696. In cases where the manner of injury is not specifically mentioned in the Act, the court must look to see whether the danger is similar to those mentioned and thus covered by the "including, but not limited to" language of the statute. In this case, we agree with the District Court that the language of the statute covers the dangers on which the plaintiffs' claims are based and AFFIRM the District Court's grant of summary judgment.
 
 
 
 [1]
 One definition, among others, of the word necessary is "of, relating to, or having the character of something that is logically required...." Webster's Third International Dictionary 1510 (16th ed. 1971)