KENT v ALPINE VALLEY SKI AREA, INC

Docket No. 210293. Submitted December 14, 1999, at Detroit. Decided May 5, 2000, at 9:05 A.M. Leave to appeal sought.

Michael and Susan Kent brought a negligence action in the Oakland Circuit Court against Alpine Valley Ski Area, Inc., and others, seeking damages for Michael Kent's injury and Susan Kent's loss of consortium from Michael Kent's fall off a chairlift. The fall occurred while Michael Kent and his five-year-old grandson were attempting to get on the chairlift together. The court, Fred M. Mester, J., granted summary disposition for the defendants, ruling that the action was barred by the Ski Area Safety Act, MCL 408.321 *et seq.*; MSA 18.483(1) *et seq.* The plaintiffs appealed.

The Court of Appeals *held*:

Pursuant to MCL 408.342(2); MSA 18.483(22)(2), each person who participates in the sport of skiing assumes the risk of injury resulting from obvious and necessary dangers, which include, among other things, collisions with ski lift towers and their components. Where injury occurs as a result of a statutorily enumerated danger, the reasonableness of the skier's or the ski area operator's conduct is irrelevant. In this case, the injury resulted from a collision with a ski lift tower and its components and therefore is within the immunity provisions of the act. The plaintiffs' arguments that the limitation of liability should apply only to collisions that occur while skiing and that collision requires that the skier and the object hit both be in motion are without merit.

Affirmed.

NEGLIGENCE — SKI AREA SAFETY ACT — ASSUMPTION OF RISK.

A snow skier assumes the risk of injury from obvious and necessary dangers, including collisions with ski lift towers and their components; where injury occurs as a result of any such dangers, the reasonableness of the skier's or the ski area operator's conduct is irrelevant (MCL 408.342[2]; MSA 18.483[22][2]).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Patrick Burkett*) and *Thomas L. Mulcahy*, for the plaintiffs.

*Robert L. Bunting* (*Robert Charles Davis*, of Counsel), for the defendants.

Before: JANSEN, P.J., and COLLINS and J. B. SULLIVAN*, JJ.

PER CURIAM. Plaintiffs appeal as of right from an order of the Oakland Circuit Court granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10) and dismissing plaintiffs' claims for damages arising from a skiing mishap. We affirm.

Plaintiff Michael Kent,[1] his son-in-law, Daniel Werner, and his two grandchildren, 3-year-old Mitchell Werner and 5-year-old Jeremy Werner, went skiing at Alpine Valley on January 1, 1996. Plaintiff was fifty-seven years of age at the time, had skied for approximately twenty years, had received formal ski instruction, and was, according to his brief, "a fairly experienced skier." Before the day of the mishap, Jeremy had received two or three private lessons on the bunny hill at Alpine and had been on the tow ropes, but had never been on a chairlift. Plaintiff and Daniel asked a ticket seller which hill would be safest for a beginner like Jeremy and were advised that the safest hill was the one right by the ski patrol, which was serviced by chairlift number three.

After purchasing "all area" tickets and skiing on the bunny hill for a time, plaintiff took Jeremy to lift number three. The two stood at the bottom of the hill for a few minutes so Jeremy could see how the chair-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff's wife brought a derivative action for loss of consortium. Dr. Kent will be referred to as "plaintiff."

lift worked and then got in line. According to plaintiff, as they approached the lift, the operator told him to move Jeremy to the inside, which would mean that Jeremy would be right next to the operator. They stepped up on some two-by-fours, but "without giving us a chance to pose ourselves, the chair came (witness smacking hands) and hit us." The chair hit plaintiff in the back of the legs and he began to sit, but because Jeremy was much shorter, it hit him up higher, near the buttocks and lower back. Jeremy started to grab for the chair, slipped and fell under the chairlift. Plaintiff reached to grab Jeremy but the post in the center of the seat blocked his reach. Plaintiff slipped off the chair, but his left arm became entangled in the seat post, broke "immediately," and plaintiff was dragged a number of feet before he fell off. When the chair caught plaintiff, the lift operator hit the stop button, but the chair went another twenty feet before it stopped. The lift operator testified that, as plaintiff and Jeremy approached the chair, he asked if they needed help and plaintiff said no. Plaintiff testified that he had taken his own children on chairlifts for the first time and was not concerned about taking Jeremy.

Plaintiff's complaint alleged that defendants were negligent in the following respects: (1) the ticket seller failed to direct plaintiff to a chairlift that could have been slowed down or stopped for loading, (2) the lift operator failed to slow or stop the chair for loading, (3) the lift operator failed to stop the chair when he saw it arriving before plaintiff and Jeremy were ready to get on, (4) the lift operator violated a basic industry safety practice by failing to stop the chair as soon as the "mis-load" happened, (5) the

chair had an excessive range of motion about its axis, and (6) the chairlift was not equipped with an adequate stop button.

Defendants filed a motion for summary disposition, arguing that (1) plaintiff's claim was barred by the Ski Area Safety Act (SASA), MCL 408.321 *et seq.*; MSA 18.483(1) *et seq.*, which precludes recovery for injuries caused by collisions with ski lifts or components thereof and injuries caused by the lift user's failure to use it properly, (2) plaintiff's claim was barred because he violated the skier responsibility code, a set of rules posted on the premises, (3) plaintiff's claim was barred because any danger posed by the chair was open and obvious, (4) plaintiff's claim was barred by a release printed on the back of his lift ticket, (5) plaintiff's claim was barred because the chairlift was a simple tool, (6) plaintiff had no evidence to support his claim that the lift was operated improperly, (7) the chairlift was not defectively maintained because it was equipped with a stop button, the chairs were checked every morning for excessive swinging, the lifts had passed annual safety inspections, and the law did not require them to be equipped with a slowing mechanism, and (8) the ticket seller was not negligent by simply telling plaintiff which was the easiest hill for Jeremy.

Plaintiff responded that (1) his claim was not barred by the SASA because the act applies only to injuries that occur while one is engaged in the act of skiing itself and whether plaintiff misused the lift was a question of fact for the jury, (2) there were questions of fact for the jury to resolve, e.g., whether the ticket seller should have directed them to a lift more suitable for young children, whether the operator

could have stopped or slowed the chairlift, should have helped Jeremy onto the chair, was improperly trained for his job, and whether the stop button was inadequate as indicated by plaintiff's expert, (3) his claim was not barred by the simple tool doctrine because he did not allege a products liability claim and the chairlift was not a simple tool, (4) his claim was not barred by the open and obvious doctrine because he did not allege a premises liability claim, and (5) his claim was not barred by a release because he did not sign any agreement to waive any potential causes of action and the disclaimer of liability on the back of the lift ticket was void as against public policy.

In granting summary disposition in favor of defendants, the trial court reached only the question whether plaintiff's claim was barred by the SASA. The court found:

> In the case before this Court, Plaintiff claims that Defendant violated its duty by negligent operation of the chair lift. MCL 408.342(2) [MSA 18.483(22)(2)] specifically refers to collisions with ski lift towers and their components. Although Plaintiff argues that it does not apply because he had not yet begun to ski, the Court is satisfied that the statute intended to apply to dangers inherent in the sport, and getting onto the chair lift is one of those dangers.

On appeal, plaintiff claims that the trial court erred in finding that his negligence claim was barred by the SASA. We disagree. A trial court's grant of summary disposition is reviewed de novo. *Amburgey v Sauder*, 238 Mich App 228, 231; 605 NW2d 84 (1999). Specifically, a court's interpretation of a statute is reviewed de novo on appeal. *Id.* When reviewing a motion decided under MCR 2.116(C)(7), this Court accepts as

true the well-pleaded allegations in the plaintiff's complaint and construes them in the plaintiff's favor. *Id.* The Court must consider the pleadings, affidavits, and other documentary evidence to determine whether a genuine issue of material fact exists. Where a material factual dispute exists such that factual development could provide a basis for recovery, summary disposition is inappropriate. *Id.* Where no material facts are in dispute, whether the claim is statutorily barred is a question of law. *Id.*[2]

The propriety of summary disposition under the SASA must be determined in conjunction with the rules of statutory construction. *Amburgey, supra* at 231. A fundamental rule of statutory construction is to ascertain the purpose and intent of the Legislature in enacting the provision. *Barr v Mt Brighton Inc,* 215 Mich App 512, 516; 546 NW2d 273 (1996). Statutory language should be construed reasonably and the purpose of the statute should be kept in mind. *Id.,* citing *Grieb v Alpine Valley Ski Area, Inc,* 155 Mich App 484, 486; 400 NW2d 653 (1986). The first criterion in determining intent is the specific language of the statute. *Barr, supra* at 516-517, citing *House Speaker v State Administrative Bd,* 441 Mich 547, 567; 495 NW2d 539 (1993). If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted and courts must apply the statute as written. *Barr, supra* at 517, citing *Turner v Auto Club Ins Ass'n,* 448 Mich 22, 27; 528 NW2d 681 (1995).

---

[2] In light of our holding, it is unnecessary to address plaintiff's claim under MCR 2.116(C)(8) and (10). See *Barr v Mt Brighton Inc,* 215 Mich App 512, 515, n 2; 546 NW2d 273 (1996).

The title of the SASA provides that the act was enacted, among other reasons, "to provide for the safety of skiers, spectators, and the public using ski areas," "to provide for certain presumptions relative to liability for an injury or damage sustained by skiers" and "to provide for liability for damages which result from a violation of this act." 1962 PA 199, amended by 1981 PA 86. Before the 1981 amendment, ski areas in Michigan were held to the "prudent man" negligence standard as stated in *Marietta v Cliffs Ridge, Inc*, 385 Mich 364, 369; 189 NW2d 208 (1971) (see Mikko, *Skiing with the Ski Area Safety Act*, 78 Mich BJ 438, 439 [May 1999]). Cf., *Marietta, supra,* at 374-375 (Dissent by BLACK, J.): "[T]he majority opinion . . . [is] nothing less than a fast start, by our newly assembled Court, toward the goal of liability without fault for damages caused by any fortuitous injury— fatal or otherwise—that is self-inflicted in the course of a voluntarily undertaken dangerous sport."

Soon thereafter, the Legislature (moved perhaps by Justice BLACK's *violenti non fit injuria* dissent), "intent [on] promoting safety, reducing litigation and stabilizing the economic conditions in the ski resort industry," *Grieb, supra* at 487, became concerned with making the skier, rather than the ski area operator, bear the burden of damages from injuries. *Schmitz v Cannonsburg Skiing Corp*, 170 Mich App 692, 695; 428 NW2d 742 (1988), quoting from the Senate Legislative Analysis, SB 49, April 17, 1981. This would "help reduce the number of lawsuits . . . [thereby] stabiliz[ing] the constantly increasing insurance costs for ski area operators, which have been passed on to skiing enthusiasts through price hikes

for ski lift tickets, rental equipment, waxing services, etc." *Id.*

The resulting 1981 amendment included, inter alia: requirements that ski operators mark trails and hills for difficulty and closure, maintain overall diagrams of the area and post the duties imposed by the act on skiers, lift passengers, and operators, MCL 408.326a; MSA 18.483(6a); provisions regarding the conduct required of skiers on ski lifts and in ski areas, MCL 408.341; MSA 18.483(21) and MCL 408.342(1); MSA 18.483(22)(1) (e.g., the skier shall ski within the limits of the skier's ability, is the sole judge of the skier's ability, shall not use a lift unless the skier can use it safely, shall maintain reasonable control of speed and heed all signs and warnings); a provision for acceptance of risks by skiers, MCL 408.342(2); MSA 18.483(22)(2), *infra*; and a provision for skiers' and operators' liability for damages, MCL 408.344; MSA 18.483(24) ("A skier or passenger who violates this act, or an operator who violates this act shall be liable for that portion of the loss or damage resulting from that violation.").

In *Grieb, supra,* this Court had occasion to interpret the provision for acceptance of risks by skiers, MCL 408.342(2); MSA 18.483(22)(2), which states:

> Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers *include, but are not limited to,* injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; *collisions with ski lift towers and their components,* with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment. [Emphasis added.]

Having reviewed the legislative history of both the act and the amendment, this Court noted that "[t]he Legislature perceived a problem with respect to the inherent dangers of skiing and the need for promoting safety, coupled with the uncertain and potentially enormous ski area operator's liability." *Grieb, supra* at 488. To solve the problem, the Legislature established rules to set out the respective responsibilities of both ski operators and skiers in the area of safety and decided that all skiers assume the obvious and necessary dangers of skiing. *Id.* at 489. In *Grieb*, the plaintiff had been struck from behind by another skier. This Court found that the statute "clearly and unambiguously provides that an injury resulting from a collision with another skier is an obvious and necessary danger assumed by skiers." *Id.* at 486.

Similarly, in *Schmitz, supra* at 696, where a skier hit a tree, this Court found that that danger was enumerated in the statute as one for which the skier accepted the risk of danger "as a matter of law." Significantly, this Court agreed with the plaintiff that certain sections of the SASA, particularly MCL 408.342(1); MSA 18.483(22)(1), which requires a skier to "[m]aintain reasonable control of his or her speed and course at all times," and MCL 408.344; MSA 18.483(24), which states that a skier or operator who violates the act is liable for the portion of loss or damage resulting from that violation, "suggest[] a comparative negligence principle such as that articulated in *Placek v Sterling Heights*, 405 Mich 638; 275 NW2d 511 (1979)." *Schmitz, supra* at 694. However, this Court concluded

it is clear from the plain and unambiguous wording of § 22(2) that the Legislature intended to place the burden of

certain risks or danger on skiers, rather than ski resort operators . . . [and that] it is logical to construe this section of the statute as an assumption of the risk clause that renders the reasonableness of the skiers' or the ski operator's behavior irrelevant. [*Id.* at 696.]

In *Barr, supra,* a skier hit a tree within a cluster of trees that the defendant considered an out-of-bounds area but that was not fenced off or marked as closed as the plaintiff claimed was required by the SASA. The plaintiff argued that, because of that noncompliance, the defendant was not entitled to the protection of the act's assumption of the risk clause, MCL 408.342(2); MSA 18.483(22)(2). Writing for this Court, Judge, now Justice, MARKMAN found that the act does not condition application of the assumption of risk provision on compliance with other sections of the act; that, by the mere act of skiing, the plaintiff assumed the risk that he would be injured colliding with a tree, which is a danger enumerated by the statute; and that the defendant was not required to mark as "closed" an area that was never "open." *Barr, supra* at 519, 522. Again, however, the opinion reiterated that MCL 408.344; MSA 18.483(24) suggests that a comparative negligence analysis may be applicable under certain circumstances, even an incident involving a tree, such as where a skier is injured trying to avoid improperly marked construction equipment or a beginner collides with a tree on an "expert" slope improperly marked as a "beginner" slope. *Id.* at 520-521, 522-523.[3]

---

[3] We note that, on October 19, 1999, the Supreme Court (Docket No. 113655), in lieu of granting leave to appeal, remanded *Barrett v Mt Brighton Inc,* (COA Docket No. 214817, lv app den 11/18/98) to this Court "for

More recently, in *McCormick v Go Forward Operating Ltd Partnership*, 235 Mich App 551; 599 NW2d 513 (1999), a skier was injured getting off the chairlift when she fell while trying to avoid another fallen skier. The plaintiff argued that the SASA was inapplicable because the plaintiff did not assume the risk of injuries caused by avoiding fallen skiers when leaving a ski lift, and that it was not obvious and necessary for a skier, when alighting from a chairlift, to have to avoid a fallen skier. In affirming the trial court's grant of summary disposition to the defendant, this Court found that "the language of the statute itself establishes that [the] plaintiff's injury comes within the immunity provisions [of MCL 408.342(2); MSA 18.483(22)(2)]." *Id.* at 554. This Court explained:

> The statute says that collision with another skier comes within the dangers that are necessary and obvious. It does not exclude the ski lift exit area. Therefore, because plaintiff's injury arose from the collision with another skier, or the attempt to avoid such a collision, it comes within the immunity provision of the statute. That is, by statutory definition, any collision with another skier constitutes a necessary and obvious danger for which defendant is immune. [*Id.*]

---

consideration as on leave granted" (On Remand, Docket No. 222777). The remand order states in part:

> On remand, the Court of Appeals is to consider whether defendant owed plaintiff a duty under the Ski Area Safety Act, MCL 408.321 *et seq.*; MSA 18.483(1) *et seq.*, to warn skiers of the presence of a snowboarding rail. In deciding this issue, the Court of Appeals is also to consider whether a snowboarding rail is an inherent part of a ski area and whether plaintiff assumed the risk of its presence. MCR 7.302(F)(1). [461 Mich 881 (1999).]

In a footnote, this Court added that, in contrast to the restriction of immunity for collisions with "properly marked" snow-making and snow-grooming equipment, there is no restriction on immunity for injuries arising from collisions with other skiers. *Id.* at n 2.

In the case at bar, plaintiff first argues that the limitation of liability contained in MCL 408.342(2); MSA 18.483(22)(2) should apply only to collisions that occur *while skiing.* However, that argument is more properly addressed to the Legislature. Plaintiff also argues that, because plaintiff was not moving when he was hit by the chair, what happened in this case was not a "collision" as defined by *The Random House Dictionary of the English Language: Unabridged Edition,* p 290 under the subheading "physics" ("the meeting of particles or of bodies in which each exerts a force upon the other, causing the exchange of energy or momentum"). We note that, at page eighteen of plaintiff's brief, he refers to "the collision between the chair and [plaintiff]," and further note that plaintiff's description on the original incident report is that "while getting on chair [sic], it hit me in the back." In any event, there is nothing in the SASA to support plaintiff's interpretation of the word "collision" to mean that it applies only while a skier is actually in the process of skiing, or that a "collision" can occur only when both the skier and the object with which the skier collides are moving. We agree with defendants that plaintiff's interpretation would require that we overrule past decisions uniformly finding no liability under the SASA when skiers collide with fences, trees, and other stationary objects.

Finally, plaintiff argues that, notwithstanding the SASA, a reasonable jury could find defendants negli-

gent on one or all of the factors raised in plaintiff's complaint. We agree with plaintiff that the statute diverges from the common law of negligence (see *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 85; 597 NW2d 517 [1999]: "[T]he Legislature has yet to modify the common-law of torts regarding recreational activities, except in two narrow areas, [the Roller Skating Safety Act, MCL 445.1721 *et seq.;* MSA 18.485(1) *et seq.*, and the Ski Area Safety Act, MCL 408.321 *et seq.;* MSA 18.483(1) *et seq.*]").[4] We further agree that common-law principles are not to be abolished by implication in the guise of statutory construction. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 652; 513 NW2d 799 (1994). Moreover, we agree that, as stated in *Grieb*, *supra*, and *Barr*, *supra*, the statute, as amended, suggests a comparative negligence analysis in certain circumstances.

However, the case before us does not present such circumstances. First, as with *McCormick*, *supra*, the language of the statute itself establishes that plaintiff's injury comes within the immunity provisions. The statute says that collisions with ski lift towers and their components constitute a danger that is obvious and necessary and that the skier accepts. Also, applying *Schmitz*, *supra*, and *Barr*, *supra*, when, as here, injuries occur as a result of any of the statutorily enumerated dangers, the reasonableness of the skier's or the operator's conduct is rendered irrelevant. The cause of plaintiff's injury was the collision with the chairlift. There are no restrictions placed on

---

[4] See also 1994 PA 351, the Equine Activity Liability Act, MCL 691.1661 *et seq.;* MSA 12.418(1) *et seq.*

the immunity for injuries arising from collisions with ski towers and their components, and the trial court did not err in granting summary disposition to defendants.[5]

---

[5] The plaintiffs' second argument in *McCormick* was that immunity should not apply where the ski area operator does not comply with safety regulations promulgated by the Ski Area Safety Board, specifically the American National Standard for Passenger Tramways (ANSI Standards) provision that requires that a lift be stopped when a situation arises that might be dangerous to passengers. 235 Mich App 555-556. This Court noted that "[t]he ANSI Standards were adopted by reference by the Ski Area Safety Board . . . and [that] [t]he board's authority to promulgate safety rules is derived by statute. MCL 408.326(1); MSA 18.483(6)(1)." Nonetheless, this Court found that the plaintiff had wrongly relied on *Dale v Beta-C, Inc*, 227 Mich App 57; 574 NW2d 697 (1997), a case holding that pursuant to the Roller Skating Safety Act (RSSA), MCL 445.1721 *et seq.*; MSA 18.485(1) *et seq.*, a roller skating rink may be liable, despite statutory immunity, where it fails to comply with safety standards promulgated by the Roller Skating Rink Operators' Association. The *McCormick* Court concluded:

> [T]here are no similar provisions in the SASA. That is, the SASA does not provide for the adoption of standards by outside agencies, nor does it provide for an exception to immunity for violation of any such standards. [*Id.* at 516.]

While we agree that the SASA does not provide for the adoption of standards by outside agencies, neither does it *prohibit* the adoption of such standards. Indeed, the *McCormick* Court notes that the ANSI standards for passenger tramways were adopted by reference by the Ski Area Safety Board. Further, we would find that the SASA arguably *does* provide for an exception to immunity for violation of those standards as follows:

> A skier or passenger who violates this act, or an operator who violates this act shall be liable for that portion of the loss or damage resulting from that violation. [MCL 408.344; MSA 18.483(24).]

The RSSA provides:

> Each roller skating center operator shall do all of the following:
>
> \*     \*     \*
>
> (b) Comply with the safety standards specified in the roller skating rink safety standards published by the roller skating rink operators association, (1980). [MCL 445.1723; MSA 18.485(3).]
>
> \*     \*     \*

However, even if we were to determine otherwise, our careful review of the record indicates that plaintiff has failed to present evidence that there was a violation of the SASA. His experts referred to that portion of American National Standards Institute (ANSI) B77.1-1992, the code that was in effect at the time of plaintiff's injury, which states, "Should a condition develop in which continued operation might endanger a passenger, the attendant shall stop the aerial lift immediately." But in deposition, one of plaintiff's experts testified that the stopping distance of Hall chairlifts, the kind used in this case, is generally eight to ten feet, or six to ten feet if the emergency hydraulic brake is utilized (which arguably endangers all other skiers on the lift who might thereby be ejected). The stopping distance can vary with temperature and friction. The chair normally goes less than seven feet per second, and the operator had 1½ to 2 seconds to evaluate the situation and hit the stop button. Using those figures, the operator would have had to hit the stop button *before* he sensed that something was wrong, an action not required by statute or ANSI regulation, to ensure that the lift stopped before hitting plaintiff and his grandson. Importantly, the experts admittedly were not present at the time of the accident and did not really know what happened except what they had been told by plaintiff, who did not

A roller skater, spectator, or operator who violates this act shall be liable in a civil action for damages for that portion of the loss or damage resulting from the violation. [MCL 445.1726; MSA 18.485(6).]

The fact that the language of the SASA, which was enacted in 1962 and amended in 1981, is not identical to that of the RSSA, which was enacted in 1988 and which specifies which safety standards are applicable, does not alter our view. In any event, the result of the case before us is unchanged.

know when the operator hit the stop button. At best, plaintiff's experts were guessing that the operator did not hit the stop button soon enough. They further opined, without support in the ANSI regulations, that the operator should have insisted on helping plaintiff, even when plaintiff refused his help. Plaintiff had testified that he taught his own children how to use a chairlift, knew of Jeremy's skill level, and was not concerned about taking him on a chairlift for the first time.

Ultimately, other than generalized opinions that the stop button should be utilized whenever there are children involved and that any lift carrying children should be equipped with a slow, as well as a stop button (even though plaintiff's expert conceded that the lack of a slow button did not violate B77), plaintiff's experts pointed to no factual evidence to establish statutory violations by defendants that could affect the otherwise unrestricted immunity for operators when a skier collides with a chairlift. Hence, any jury verdict would necessarily have been based on speculation. It is well settled that a case should not be submitted to a jury where a verdict must rest on conjecture or guess. *King v Nicholson Transit Co*, 329 Mich 586, 593; 46 NW2d 389 (1951), cert den 342 US 886; 72 S Ct 176; 96 L Ed 665 (1951).

Affirmed.