RUSNAK v WALKER

Docket No. 264671. Submitted October 4, 2006, at Lansing. Decided
December 19, 2006, at 9:10 a.m. Leave to appeal sought.

Toni Rusnak brought an action in the Oakland Circuit Court against
Matt Walker, seeking damages for injuries she suffered when the
defendant collided with her on a downhill ski run. The court,
Colleen A. O'Brien, J., granted the defendant summary disposi-
tion, concluding that, under the Ski Area Safety Act (SASA), MCL
408.321 *et seq.*, skiers assume the risk of certain dangers inherent
in the sport, such as collisions with other skiers. The plaintiff
appealed by leave granted. The Court of Appeals, COOPER, P.J., and
NEFF and BORRELLO, JJ., affirmed because it was required to follow
the precedent of a line of cases that interpreted SASA as granting
absolute immunity to ski-area operators and skiers for injuries
resulting from statutorily enumerated dangers, including a colli-
sion with another skier. Had it not been obligated to follow those
cases, the panel would have followed the reasoning of *Dale v
Beta-C, Inc,* 227 Mich App 57 (1997), which addressed the analo-
gous provisions of the Roller Skating Safety Act, MCL 445.1721 *et
seq.*, and held that a skater assumes the risk of obvious and
necessary dangers inherent in roller-skating, but does not assume
the risk of an operator violating the duties prescribed under that
act. 271 Mich App 567 (2006). The Court convened a special panel
to resolve the conflict between this case and *Kent v Alpine Valley
Ski Area, Inc,* 240 Mich App 731 (2000), *McCormick v Go Forward
Operating Ltd Partnership,* 235 Mich App 551 (1999), and *Barr v
Mt Brighton, Inc,* 215 Mich App 512 (1996), and vacated part IV of
its prior opinion in this case. 271 Mich App 801 (2006).

After consideration by the special panel, the Court of Appeals
*held*:

The trial court erred by dismissing the plaintiff's complaint on
the basis of SASA's assumption-of-risk provision alone. While that
provision, MCL 408.342(2), indicates that a skier assumes the risk
of injury from an obvious and necessary danger inherent in skiing,
such as colliding with another skier, it must be reconciled with
other provisions of SASA that place duties on skiers to ski safely
and not injure another skier, MCL 408.341(1) and 408.342(1)(a),

and establish limited liability for injuries caused by violating those sections, MCL 408.344. Thus, a skier assumes the risk of colliding with another skier, but can still recover limited damages against an individual skier if he or she can prove that the defendant violated the duties SASA places on skiers, to the extent that the defendant's violations of SASA caused the plaintiff's injuries.

Reversed and remanded.

Negligence — Ski Area Safety Act — Assumption of Risk.

A skier assumes the risk of injury from obvious and necessary dangers inherent in skiing, such as the risk of a collision with another skier, but an injured skier who sues for negligence can still recover limited damages if he or she can prove that the defendant violated a specific duty imposed on the defendant by the Ski Area Safety Act, such as the duty to ski safely and not injure another skier, to the extent that the defendant's violation of the act caused the plaintiff's injuries (MCL 408.341[1], 408.342[1][a], [2], 408.344).

*Muth and Shapiro, P.C.* (by *Andrew S. Muth* and *Douglas B. Shapiro*), for the plaintiff.

*Bigler, Berry, Johnston, Sztykiel & Hunt, P.C.* (by *Witold Sztykiel* and *Mary Jo Boerman*), for the defendant.

Before: Whitbeck, C.J., and Bandstra, Markey, Smolenski, Kelly, Murray, and Donofrio, JJ.

Murray, J.

## I. INTRODUCTION

Snow skiing is a popular sport in Michigan, with thousands of skiers descending on Michigan's ski slopes each winter. With all the skiers, of course, comes a wide range of skill levels. Adding to that, Michigan's wintry conditions are sometimes not ideal for visual navigation, or for stopping or turning. Collisions between skiers, therefore, do occur. In this case, for instance, defendant Matt Walker was skiing down a run at Boyne

Mountain Ski Resort when he collided with plaintiff Toni Rusnak, who was further down the hill than Walker when the collision occurred. To address certain liability issues associated with snow skiing, including collisions between skiers, the Legislature enacted the Ski Area Safety Act (SASA), MCL 408.321 *et seq*. The question before us in this case is whether the assumption-of-risk provision within the SASA bars plaintiff's claim that is based on a collision and resulting injuries allegedly caused by defendant's violation of this act.

In *Rusnak v Walker*, 271 Mich App 567; 723 NW2d 210 (2006), a panel of this Court held that the individual defendant, Walker, was immune from suit under the SASA as interpreted by *Kent v Alpine Valley Ski Area, Inc*, 240 Mich App 731; 613 NW2d 383 (2000), *McCormick v Go Forward Operating Ltd Partnership*, 235 Mich App 551; 599 NW2d 513 (1999), and *Barr v Mt Brighton, Inc*, 215 Mich App 512; 546 NW2d 273 (1996). However, the *Rusnak* panel also concluded that the *Kent, McCormick*, and *Barr* decisions were incorrectly decided, as the *Rusnak* panel opined that under certain circumstances an individual could be liable for injuries that occurred from a collision between two skiers. *Rusnak, supra* at 585. Thus, were it not for the binding precedent, see MCR 7.215(J)(1), the *Rusnak* panel would have reversed the trial court's grant of defendant's motion for summary disposition. *Id.* at 569.

With that formal declaration, by operation of our court rules, the judges of this Court were polled, and a majority concluded that the conflict between *Rusnak* and *Kent, McCormick,* and *Barr* should be resolved. 271 Mich App 801 (2006). That being our task, we turn now to a brief recitation of the undisputed material facts, and then to an analysis of this rather interesting issue of statutory construction.

## II. MATERIAL FACTS

We take the material facts and procedural history straight from the prior *Rusnak* opinion because they are clear, concise, and correct:

> Plaintiff filed this action after she was injured in a collision with defendant while skiing at Boyne Mountain ski resort on December 30, 2002. Plaintiff and defendant were skiing down the same run. Plaintiff was the "downhill" skier and defendant was the "uphill" skier.[5] According to plaintiff, at the time of the collision, she was making short, controlled slalom turns, moving ten to 12 feet laterally as she turned. The ski slope was wide open; there were no other skiers nearby. Plaintiff heard someone yell, "Watch out," and she was struck from behind and knocked down by defendant. She suffered fractures of her humerus and lumbar spine.
>
> Defendant moved for summary disposition, arguing that plaintiff's claims were barred by SASA, MCL 408.342(2), which provides that skiers accept the risk of a collision with another skier. Alternatively, defendant argued that as coparticipants in a recreational sport, defendant owed plaintiff only a duty not to act recklessly, and plaintiff failed to show any evidence of recklessness by defendant. Plaintiff moved to amend her complaint to add a count of reckless misconduct. The trial court denied plaintiff's motion and granted summary disposition for defendant. The court agreed with defendant that plaintiff's claim was barred as a matter of law by the assumption of risk provisions of SASA.

---

[5] That is, defendant was at a higher point on the ski slope.

---

[*Rusnak, supra* at 570.]

### III. ANALYSIS

Resolution of this case requires application of the undisputed and straightforward facts to the relevant

sections within the SASA. Consequently, our review is de novo. *Cruz v State Farm Mut Automobile Ins Co,* 466 Mich 588, 594; 648 NW2d 591 (2002). Additionally, our review of the trial court's grant of defendant's motion for summary disposition is de novo. *MacDonald v PKT, Inc,* 464 Mich 322, 332; 628 NW2d 33 (2001).

### A. SASA

Because this case is governed by the SASA, we first look to the language actually employed by the Legislature in setting out the rights, duties, and liability of skiers. See *Anderson v Pine Knob Ski Resort, Inc,* 469 Mich 20, 24; 664 NW2d 756 (2003). To begin with, § 21(1) of the SASA, MCL 408.341(1), states:

> *A skier shall conduct himself or herself within the limits of his or her individual ability and shall not act or ski in a manner that may contribute to* his or her injury or to *the injury of any other person.* A skier shall be the sole judge of his or her ability to negotiate a track, trail, or slope. [Emphasis added.]

Thus, pursuant to MCL 408.341(1), a skier "shall" ski within his or her abilities and "shall not" ski in such a way as to contribute to the injury of another person.

In the same vein, § 22(1)(a) of the SASA, MCL 408.342(1)(a), requires each skier to "[m]aintain reasonable control of his or her speed and course at all times." In sum, then, we see that portions of §§ 21 and 22 of the SASA place an affirmative duty on all skiers to ski within their abilities, to maintain reasonable control of their speed and course at all times, and not to ski in a manner that could contribute to the injury of another skier. MCL 408.341(1); MCL 408.342(1)(a).

With these (and other inapplicable) duties established, the Legislature then addressed the liabilities for,

and the risks assumed by, skiers. With regard to assumed risks, § 22(2), MCL 408.342(2), contains an assumption-of-risk provision that specifically applies to collisions between skiers:

> *Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include,* but are not limited to, *injuries which can result from* variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; *collisions* with ski lift towers and their components, *with other skiers,* or with properly marked or plainly visible snow-making or snow-grooming equipment. [Emphasis added.]

Through this subsection, the Legislature has clearly indicated that collisions with other skiers are an obvious and necessary danger that inheres in the sport and that the skier has assumed the risk of being injured by such a danger.

The final provision relevant to this issue is § 24, MCL 408.344, which provides for liability against any skier who "violates this act," with liability being limited to "that portion of the loss or damage resulting from that violation." Reading §§ 22(2) and 24 together, the Legislature has provided a system whereby skiers assume the risk of injury from dangers inherent in skiing that are "obvious and necessary," but which also provides liability against a skier for any injuries that were caused by a violation of the duties imposed on skiers under the SASA.

Accordingly, and for the reasons explained more fully below, we hold that under the plain language of the assumption-of-risk provision, MCL 408.342(2), plaintiff assumed the risk of being injured by a collision with another skier because that provision precisely states as much, without exception. However, because plaintiff

has produced evidence that defendant may have violated his duties under the SASA, as well as evidence that those violations may have caused plaintiff's injuries, defendant may still be liable to plaintiff for "that portion of the loss or damage resulting from that violation." MCL 408.344.

Our judicial duty is to enforce the plain, unambiguous provisions of a statute. *Herald Co v Bay City,* 463 Mich 111, 117-118; 614 NW2d 873 (2000). We long ago recognized that the judiciary cannot read restrictions or limitations into a statute that plainly contains none. *Threet v Pinkston,* 20 Mich App 39, 41; 173 NW2d 731 (1969).

The crux of this case is whether the broad assumption-of-risk subsection can be reconciled with the provisions (1) placing duties on skiers to ski safely and not injure another skier and (2) providing liability for injuries caused by those violations. As we have already noted, we hold that the SASA assumption-of-risk provision contains clear and unambiguous language, providing in no uncertain terms that a collision between skiers is an obvious and necessary danger that inheres in the sport of skiing. However, in those cases in which a plaintiff can establish that a defendant violated one of the specific duties imposed by the SASA, the plaintiff can still recover damages to the extent that the defendant's violations caused the plaintiff's injuries. To state it differently, it is possible, and therefore skiers assume the risk, that a collision can occur between skiers when neither skier is violating his or her duties under the SASA. That is, it is an obvious and necessary danger of skiing that sometimes accidents simply happen. But, again, if it can be shown that the collision resulted from a violation of the act, then the violator is to be held liable for the damage caused, as provided under MCL 408.344.

The prior *Rusnak* panel did not read these sections together the same way as we have. Instead, relying on *Dale v Beta-C, Inc,* 227 Mich App 57; 574 NW2d 697 (1997), the prior panel read these provisions as providing that if defendant had violated another section of the SASA, the collision with plaintiff would not have been an "obvious and necessary" danger, and therefore the assumption-of-risk provision would not apply:

> Under SASA, a skier accepts the dangers of skiing, e.g., collisions with other skiers, only "insofar as the dangers are obvious and necessary." If a skier is alleged to have violated the statutory duties that the Legislature imposed, it cannot be said that the risk of collision was "obvious and necessary." [*Rusnak, supra* at 574.]

For several reasons, we do not agree with this statutory analysis. First, and contrary to the *Rusnak* panel's analysis, *Dale* did not hold that the "obvious and necessary" danger language in the assumption-of-risk section of the Roller Skating Safety Act (RSSA), MCL 445.1721 *et seq.,* was implicated in the liability provisions of the RSSA. Instead, the *Dale* Court held that the facially conflicting sections could be read together so that the skater assumes the risks set forth in the RSSA assumption-of-risk section, but does not assume the risk that another person or entity would violate the RSSA:

> In order to preclude such an unintended result and to preserve the legislative purpose underlying the RSSA, the assumption of risk provision of § 5 must be read in conjunction with the duties of operators set forth in § 3 and the creation of civil liability for operators as set forth in § 6. Reconciliation of these provisions leads us to hold that a skater does not assume the risk of an operator violating the duties prescribed under the act. If a violation of § 3 of the RSSA is alleged and proved, then pursuant to § 6 the operator "who violates this act shall be liable in a civil

> action for damages for that portion of the loss or damage resulting from the violation." MCL 445.1726; MSA 18.485(6). [*Dale, supra* at 67.]

Hence, the *Dale* Court did not rule that a specifically enumerated inherent danger was not "obvious and necessary" if it resulted from another skater's violation of the act. It simply, and we believe correctly, ruled that being injured by another person's violation of the act was not an assumed risk.

Second, nowhere in § 22(2) is there any limitation or restriction on the risks assumed. For example, the Legislature did not start off the subsection by stating "except for violations of other sections of this act," the skier assumes the obvious and necessary dangers inherent in the sport. We recognize, of course, that there are many ways the Legislature could have written the statute, and our focus must remain on the words the statute actually contains. And, as we have noted, the assumption-of-risk provision is clear and unambiguous, providing that a skier assumes the risk of obvious and necessary dangers that inhere in the sport, and "[t]hose dangers" specifically include collisions with other skiers. MCL 408.342(2). There is no mention or reference to any other sections of the act, or to how a violation of another section would affect the legislative determination that collisions with other skiers constitute an obvious and necessary danger inherent in skiing and assumed by every skier.

Third, unlike the prior *Rusnak* panel, we do not read *Anderson* as being applicable to this case. Although the *Anderson* Court[1] analyzed whether a timing shack was both a "danger inherent in the sport" and a danger "that was obvious and necessary," that was for the

---

[1] And one of the dissenters. See *Anderson, supra* at 31 (CAVANAGH, J., dissenting).

purpose of determining whether the timing shack fell within the assumption-of-risk subsection. *Anderson, supra* at 24. Quite logically, the *Anderson* Court utilized the key phrases from the statute to determine whether an item not specifically listed in the statute (a timing shack) was nevertheless the type of unnatural object intended to fall within the nonexhaustive list of dangers covered by the statute. *Anderson, supra* at 24-25. In our case, however, the Legislature has specifically determined that collisions with other skiers are an "obvious and necessary" danger that inheres in the sport, MCL 408.342(2). Thus, there is no need to engage in the analysis employed by the *Anderson* Court. Stated differently, the two-part *Anderson* test is to be used for determining whether a natural or unnatural object or condition that is *not* listed within the statute is an obvious and necessary danger that inheres in the sport of skiing, and therefore a risk assumed by the skier.

As the *Dale* Court recognized, our task is to read potentially conflicting provisions of a statute together in a way that gives effect, to the extent possible, to all the provisions. *Dale, supra* at 65; see also *Betten Auto Center, Inc v Dep't of Treasury,* 272 Mich App 14, 24; 723 NW2d 914 (2006), citing *Michigan Bell Tel Co v Dep't of Treasury,* 229 Mich App 200, 216; 581 NW2d 770 (1998). A somewhat similar canon is that we cannot (absent legislative direction) enforce one section of a statute in such a way that it renders meaningless another equally applicable section. *Betten Auto, supra* at 24, citing *People v Borchard-Ruhland,* 460 Mich 278, 285; 597 NW2d 1 (1999).

Here we have a broad, clear assumption-of-risk provision that contains no reservation or limitation of its scope. Indeed, many of our earlier cases held that this subsection alone barred any claim involving a listed

danger, no matter how that danger was created. See *Grieb v Alpine Valley Ski Area, Inc,* 155 Mich App 484, 486; 400 NW2d 653 (1986); *Schmitz v Cannonsburg Skiing Corp,* 170 Mich App 692, 695-696; 428 NW2d 742 (1988); *Kent, supra* at 743-744; *McCormick, supra* at 555-556. We do agree, however, with the prior *Rusnak* panel's holding that, to the extent some of these cases held that under *all* circumstances the actions of the defendant are irrelevant, they were in error.

The actions or inactions of a defendant cannot always be irrelevant, for if they were, the duties and liabilities placed on individual skiers would have no meaning. Indeed, we cannot favor one section, such as the assumption-of-risk provision, over other equally applicable sections, such as the duty and liability provisions. *Betten Auto, supra* at 24. Reading these provisions together while giving them full force and effect, we hold that a plaintiff assumes the risk of colliding with another skier because that is what the Legislature has specified under MCL 408.342(2), but a plaintiff can still recover limited damages against an individual skier if the plaintiff can prove that a defendant violated the duties placed on skiers and that the defendant's violation of the SASA caused the injuries suffered by the plaintiff, MCL 408.344. Although the prior *Rusnak* panel did not reconcile these statutory provisions in this way, the ultimate conclusion that we have come to today is consistent with the prior panel's ultimate conclusion. We now turn to the prior caselaw on this issue.

### B. THE CASELAW

As recognized by the order convening this conflict panel, the prior *Rusnak* panel was of the opinion that its conclusion conflicted with several prior published opinions of this Court. The binding, post-November 1,

1990, decisions that the *Rusnak* panel's interpretation of the SASA conflicted with are *Kent, McCormick,* and *Barr.*

We agree with the prior *Rusnak* panel's discussion of these decisions. See *Rusnak, supra* at 577-582. Nevertheless, we will briefly discuss our views on several cases that reinforce our reading of the relevant statutory provisions.[2] In *Barr v Mt Brighton, Inc,* the plaintiff was injured when he collided with a tree in an area considered by the defendant to be closed, but which was not marked off as closed. *Barr, supra* at 514. Plaintiff sued the corporate defendant, alleging that it had violated its statutory duties under the SASA by not properly posting or lighting the area. *Id.* at 514-516. This Court reversed the trial court's denial of the defendant's motion for summary disposition, holding that the plaintiff had assumed the risk of colliding with trees because that was a danger listed in § 22(2). *Id.* at 522-523.

There are, however, two aspects of *Barr* that bear on this case. First, *Barr* relied in part on *Skene v Fileccia,* 213 Mich App 1; 539 NW2d 531 (1995), and the reasoning in *Skene* was subsequently repudiated by the conflict panel in *Dale.* As the prior *Rusnak* panel detailed, the *Dale* Court's reading of analogous provisions of the RSSA diluted—if not eliminated—the broad, all encom-

---

[2] *Grieb v Alpine Valley Ski Area, Inc,* contained a set of facts virtually identical to the instant case. In *Grieb,* the plaintiff was struck from behind by an unknown skier as she was skiing down a ski slope. *Grieb, supra* at 485. The Court held that § 22(2) barred the plaintiff's case because it unambiguously states that collisions with other skiers are an obvious and necessary danger assumed by skiers. *Id.* at 486. However, the defendant in *Grieb* was the ski resort, not the skier who collided with the plaintiff, so the Court had no reason to address the interplay between § 22(2) and §§ 21(1), 22(1), and 24. Thus, the *Grieb* Court's rationale and ultimate holding are not dispositive of this case.

passing construction given by the *Skene* Court to the RSSA's assumption-of-risk section.

Second, the *Barr* Court ultimately held that the defendant had not, as a matter of law, violated any duties imposed by the SASA. *Barr, supra* at 519-520. However, although *Barr* did not involve a defendant acting in derogation of its duties under the SASA, the Court nonetheless noted that there would be circumstances in which the acts of the defendant would be relevant to an analysis of the assumption-of-risk provision. *Id.* at 522. As an example of such a circumstance, the *Barr* Court posited "a skier's collision with a tree caused by the skier seeking to avoid improperly marked construction equipment located on a ski slope. MCL 408.326a(a)[.]"[3] *Id.* In such a situation, the Court concluded that the defendant's acts would be relevant for a comparative negligence evaluation:

> We do not suggest that every incident involving a tree necessarily falls under the assumption of risk clause of the act. For instance, *there may be incidents involving a tree where a skier also has been subjected to dangers from which the risk of an injury is not assumed by the skier under the act, e.g., a skier's collision with a tree caused by the skier seeking to avoid improperly marked construction equipment located on a ski slope.* MCL 408.326a(a); MSA 18.483(6a)(a). *At that point, a ski area operator's behavior and compliance with the act would not be irrelevant.* Plaintiff suggests that this is one of those cases, claiming that defendant should have marked the area as closed in order to warn skiers of the danger posed by the proximity of the trees. However, we do not believe that defendant was under any obligation to mark as "closed" an area on the hill that was never "open." The harm suffered by plaintiff thereafter was the result of one of the very dangers from

---

[3] MCL 408.326a(a) places a duty on ski operators to equip authorized equipment, such as snow-grooming vehicles or construction equipment located on slopes, with a flashing or rotating yellow light.

which the risk of injury is specifically assumed by plaintiff under the act—trees. Plaintiff assumes no less of a risk from "trees" because he is skiing on a trail never "open" for skiing than he would if he is skiing on a properly "open" trail. [*Id.* at 522-523 (emphasis added).]

In continuing its analysis, the *Barr* Court provided another illustrative example of when a defendant's conduct may be relevant to a case involving an assumed risk:

We distinguish this case from one, for example, where a beginning-level skier has skied down an "expert" slope because the slope has been improperly marked as a "beginner" slope and has collided with a tree. In such a case, the ski area operator's failure to comply with its duties under the act, MCL 408.326a(c); MSA 18.483(6a)(c), would not necessarily be irrelevant. Unlike the instant case, the ski area operator's failure to comply would relate to a danger, i.e., beginners skiing down "expert" slopes, from which the risk of injury would not be assumed by a skier under the act. [*Id.* at 523 n 7.]

Several years earlier, the *Schmitz* Court made this same observation:[4]

Plaintiff contends that the language of the Ski Area Safety Act sets up a scheme of codified negligence using the common-law standards of reasonable behavior under the circumstances. This contention is supported by the language of MCL 408.342(1); MSA 18.483(22)(1) which states that a skier must "[m]aintain reasonable control of his or her speed and course at all times." Plaintiff's contention is further supported by MCL 408.344; MSA 18.483(24), which states that a skier or ski area operator who violates the act is "liable for the portion of loss or damage resulting from that violation," *and which suggests a comparative negligence principle such as that articulated in Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), reh den 406

[4] We note that, like *Barr, Schmitz* involved a lawsuit brought against the ski resort, not an individual skier.

> Mich 1119 (1979). *Indeed, the Senate's own analysis of the amended act notes that it was intended to coincide, rather than conflict, with the existing comparative negligence law by reiterating that each person is liable for his own actions and encouraging skiers to seriously accept responsibility for their own safety and that of others.* Senate Legislative Analysis, SB49, April 17, 1981.

* * *

> *Under many circumstances, the question of whether the skier or ski area operator has violated the statute would be measured by a negligence standard. For example, the question of whether a skier had maintained reasonable control of his speed and course as directed by MCL 408.342(1); MSA 18.483(22)(1) would usually be a question for the trier of fact. In such a case, common-law negligence principles of "reasonable under the circumstances" and comparative negligence would be applicable.* [*Id.* at 694-695 (emphasis added).]

Likewise, in *Kent*, a case involving a skier injured while riding on a chair lift, this Court upheld the order granting the ski operator's motion for summary disposition, but nevertheless noted that, as recognized in *Barr*, "the statute, as amended, suggests a comparative negligence analysis in certain circumstances." *Kent, supra* at 743; accord *Barr v Mt Brighton Inc,* 454 Mich 910, 911 (1997) (BOYLE, J., concurring in the denial of leave, but questioning the Court of Appeals conclusion that a defendant's violation of the SASA was irrelevant, opining that such an interpretation "would abrogate any duty imposed by the statute").

Hence, in *Barr*, *Kent*, and *Schmitz*, our Court recognized, albeit in dicta, that when a plaintiff has adequately pleaded or proven that an incident occurred because of a defendant's violation of the SASA, those actions of the defendant are relevant for purposes of determining the allocation of fault—and thus damages

—between the plaintiff and the defendant. Under this view, the plain language of the entire SASA is given force and effect. Not only is this reading consistent with the plain language of the relevant sections, it also conforms to the legislative purpose in enacting the SASA, i.e., to reduce the liability of ski operators while at the same time placing many, but not all, risks of skiing on the individual skiers. *Anderson, supra* at 23; *McGoldrick, supra* at 295-296; *Hakari v Ski Brule, Inc,* 230 Mich App 352, 356; 584 NW2d 345 (1998).

With this in mind, we hold that the trial court erred in dismissing plaintiff's complaint on the basis of the assumption-of-risk provision alone. We therefore reverse the trial court's order and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

Reversed and remanded.