McCORMICK v GO FORWARD OPERATING LIMITED PARTNERSHIP

Docket No. 208658. Submitted April 6, 1999, at Grand Rapids. Decided May 21, 1999, at 9:00 A.M.

Jamie E. and Michael McCormick brought an action in the Antrim Circuit Court against Go Forward Operating Limited Partnership, operator of the Shanty Creek Resort, seeking damages resulting from injuries that Jamie McCormick suffered when she twisted a knee as she attempted to avoid a skier who had fallen in the exit area of a chairlift at the Shanty Creek Resort. The plaintiffs based their claim on the alleged failure to construct the exit area of the chairlift and to operate the chairlift in a manner so that a person riding the chairlift would not be placed in a position of danger when another skier had fallen in the exit area of the chairlift. The defendant moved for summary disposition on the basis of subsection 2 of § 22 of the Ski Area Safety Act, MCL 408.342(2); MSA 18.483(22)(2), which provides that a skier accepts the obvious and necessary dangers that inhere in the sport, including injuries that result from collisions with other skiers. The court, Phillip E. Rogers, Jr., granted summary disposition for the defendant, finding that the defendant was immune from liability for damages resulting from the collision or near collision with a fallen skier. The plaintiffs appealed.

The Court of Appeals *held*:

1. The language of the statute clearly provides that a collision with another skier is one of the obvious and necessary dangers that are accepted by persons who engage in the sport of skiing. The statute does not exclude collisions in the exit area of a ski lift from the scope of the immunity from liability that is thereby granted by the statute to operators of ski areas. Because the alleged injury arose out of a collision or near collision with another skier and the location of that collision or near collision is irrelevant under immunity provisions of the statute, the defendant is immune from liability irrespective of the nature of the design of the exit area or the manner of the operation of the chairlift. Accordingly, the trial court properly granted summary disposition for the defendant.

2. The plaintiffs' reliance on the holding in *Dale v Beta-C, Inc*, 227 Mich App 57 (1997), is misplaced. That case was decided under

the provisions of the Roller Skating Safety Act, MCL 445.1721 *et seq.*; MSA 18.485(1) *et seq.*, which specifically provides that operators of roller skating centers must comply with the safety standards published by the rink operators association and that rink operators are liable for civil damages resulting from a violation of the act. The Ski Area Safety Act has no similar statutory adoption of the safety standards of an outside agency, nor does it exempt from its general grant of immunity injuries that result from the failure of a ski area operator to comply with the safety standards adopted by an outside agency. Thus neither the adoption by reference by the Ski Area Safety Board of safety standards developed by the American National Standards Institute, Inc., nor any violation of those standards would defeat the operation of the immunity provision of § 22 of the Ski Safety Act. Whether such an exception to the immunity provision of the Ski Area Safety Act should be provided is a question for the Legislature, not for the courts.

Affirmed.

NEGLIGENCE — SKI AREA SAFETY ACT — ASSUMPTION OF RISK — IMMUNITY FROM LIABILITY — SKI LIFTS.

Injuries to a skier resulting from the collision or near collision with another skier, including collisions or near collisions in the exit area of a ski lift, are among the obvious and necessary dangers that are accepted by those who participate in the sport of skiing and for which ski area operators are immune from liability under the provisions of the Ski Area Safety Act; the statutory immunity from liability of ski area operators for injuries to skiers resulting from collisions with other skiers remains even if a ski area operator fails to comply with safety standards promulgated by the American National Standards Institute that have been adopted by reference in an administrative rule by the Ski Area Safety Board (MCL 408.342[2]; MSA 18.483[22][2]; 1993 AACS, R 408.65).

*Fink Zausmer, P.C.* (by *Gary K. August*), for the plaintiff.

*Sullivan & Crowley, P.C.* (by *James I. Sullivan* and *Jeffrey J. Noorman*), for the defendant.

Before: MCDONALD, P.J., and SAWYER and COLLINS, JJ.

SAWYER, J. Plaintiffs appeal from the trial court's grant of summary disposition in favor of defendant on plaintiffs' negligence claim. We affirm.

Plaintiffs' claim arises from an accident suffered by plaintiff Jamie McCormick hereinafter (plaintiff) while skiing at defendant's facility. Briefly, plaintiff was skiing with a friend, Kimberly Mills, at defendant's Shanty Creek Resort. Plaintiff and her friend were riding a two-person lift chair to the top of a hill. Another skier had fallen some distance away in the path of the skiers leaving the ski lift.[1] Plaintiff testified that she saw the fallen skier shortly before the lift deposited plaintiff and her friend on the slope.

According to plaintiff, after alighting from the lift, she tried to maneuver out of the way of the fallen skier. Although plaintiff did avoid the fallen skier, in the process, she lost control of her skis and, while trying to regain control, twisted her knee, causing an injury to the knee. Plaintiff testified that her skis may have touched Mills' skis, but she was not certain.

The trial court granted summary disposition in favor of defendant, agreeing with defendant that it was immune from liability under the Ski Area Safety Act (SASA), MCL 408.321 *et seq.*;  MSA 18.483(1) *et seq.* On appeal, plaintiffs raise two issues.

First, plaintiffs argue that the SASA is inapplicable to the case at bar because, under the act, skiers only assume risks that are obvious and necessary and the act does not apply to injuries caused by avoiding fallen skiers when leaving a ski lift. We disagree.

A ski area operator's immunity from liability derives from the following statutory provision:

---

[1] Plaintiff described the fallen skier as being a short distance away, but that the fallen skier was outside the so-called ramp area—an area marked by cones indicating the exit area of the ski lift.

Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, *injuries which can result from* variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; *collisions* with ski lift towers and their components, *with other skiers*, or with properly marked or plainly visible snow-making or snow-grooming equipment. [MCL 408.342(2); MSA 18.483(22)(2) (emphasis added).]

The crux of plaintiffs' argument is that it is not obvious and necessary for a skier, when alighting from a chairlift, to have to avoid a fallen skier. Therefore, plaintiffs argue, the immunity provision does not apply. We disagree.

The language of the statute itself establishes that plaintiff's injury comes within the immunity provisions. The statute says that collision with another skier comes within the dangers that are necessary and obvious. It does not exclude the ski lift exit area.[2] Therefore, because plaintiff's injury arose from the collision with another skier, or the attempt to avoid such a collision, it comes within the immunity provision of the statute. That is, by statutory definition, any collision with another skier constitutes a necessary and obvious danger for which defendant is immune. In short, the location of the collision or fallen skier is irrelevant.

Because the location of the fallen skier is irrelevant, so is the testimony offered by plaintiffs that the

---

[2] This is in contrast to the provision of the same section with respect to snow-making and snow-grooming equipment: the statute specifically requires that such equipment be properly marked or plainly visible in order for immunity to apply. No restrictions are placed on immunity for injuries arising from collisions with other skiers.

ramp area marked by the cones was inadequately small or that collisions with fallen skiers in the ramp area could be avoided by stopping the lift. Perhaps the statute should retain liability to the ski area operator for collisions occurring within the exit ramp area where the ski lift operator does not stop the lift, including requirements for the size and shape of exit ramps. However, the statute does not. The decision whether such provisions or exceptions are necessary and appropriate is for the Legislature to determine, not the courts.

In brief: by statute, the Legislature has determined that collisions with other skiers, without regard to the area in which the collision occurs, is a necessary and obvious danger of skiing for which the ski area operator is not liable. Because plaintiff's injury arose from the collision or near collision with another skier, defendant is immune from liability under the provisions of the SASA.

Plaintiffs' second argument is that immunity should not apply where the ski area operator does not comply with safety regulations promulgated by the Ski Area Safety Board. We disagree.

Plaintiffs' argument is based on our decision in *Dale v Beta-C, Inc*, 227 Mich App 57; 574 NW2d 697 (1997), which held that a roller skating rink may be held liable, despite statutory immunity, where it fails to comply with safety standards promulgated by the Roller Skating Rink Operators Association.

In an attempt to establish a similar basis for liability with respect to the sport of skiing, plaintiffs point to the American National Standard for Passenger Tramways (ANSI Standards) provision that requires that a lift be stopped when a situation arises that

might be dangerous to passengers. The ANSI Standards were adopted by reference by the Ski Area Safety Board. 1993 AACS, R 408.65. The board's authority to promulgate safety rules is derived by statute. MCL 408.326(1); MSA 18.483(6)(1).

Plaintiffs' reliance on *Dale, supra,* is misplaced. In *Dale,* the Court had to consider the provisions of the Roller Skating Safety Act, MCL 445.1721 *et seq.*; MSA 18.485(1) *et seq.,* and, specifically, the statutory requirement that roller skating center operators comply with safety standards published by the rink operators association, MCL 445.1723(b); MSA 18.485(3)(b), and that rink operators are liable for civil damages resulting from a violation of the act, MCL 445.1726; MSA 18.485(6). Indeed, the liability of the defendant in *Dale* was specifically premised on those statutory provisions and the conclusion that those provisions provided an exception to the general immunity afforded rink operators. *Dale, supra* at 66-67.

In the case at bar, there are no similar provisions in the SASA. That is, the SASA does not provide for the adoption of safety standards by outside agencies, nor does it provide for an exception to immunity for violation of any such standards. Whether the statute should provide for an exception to immunity upon the violation of a safety standard is a decision for the Legislature to make, not this Court. Because the Legislature has not chosen to do so, we decline to do so ourselves.

For the above reasons, we conclude that the trial court properly granted summary disposition to defendant.

Affirmed. Defendant may tax costs.