RUSNAK v WALKER

Docket No. 264671. Submitted June 6, 2006, at Detroit. Decided July 20, 2006, at 9:00 a.m. Vacated in part by order entered August 16, 2006. 271 Mich App 801.

Toni Rusnak brought an action against Matt Walker in the Oakland Circuit Court, seeking damages for injuries she suffered when the defendant collided with her on a downhill ski run. The trial court, Colleen A. O'Brien, J., granted the defendant's motion for summary disposition because under the Ski Area Safety Act (SASA), MCL 408.321 *et seq.*, skiers assumed the risk of certain dangers inherent in the sport, such as collisions with other skiers. The plaintiff appealed by leave granted.

The Court of Appeals *held*:

1. MCR 7.215(J)(1) requires the Court to follow the holdings in a line of cases that interpreted SASA to grant absolute immunity to ski area operators and skiers for injuries resulting from a set of statutorily enumerated dangers, including collisions with other skiers. Were it not bound to follow these cases, the Court would follow the reasoning of *Dale v Beta-C, Inc*, 227 Mich App 57 (1997), which held that under the analogous provisions of the Roller Skating Safety Act, MCL 445.1721 *et seq.*, skaters assume the risk of obvious and necessary dangers inherent in the sport of roller-skating, but do not assume the risk of an operator violating the prescribed duties under the act. Applying this reasoning to SASA would avoid rendering nugatory the provision that imposes liability on those skiers who violate their duties under the act.

2. The trial court properly denied the plaintiff's motion to amend her complaint to allege a claim of reckless conduct against the defendant, because the plaintiff's sole recourse in this case is under SASA.

Affirmed.

*Muth and Shapiro, P.C.* (by *Andrew S. Muth*), for the plaintiff.

*Bigler, Berry, Johnston, Sztykiel & Hunt, P.C.* (by *Witold Sztykiel* and *Mary Jo Boerman*), for the defendant.

Before: COOPER, P.J., and NEFF and BORRELLO, JJ.

PER CURIAM. In this personal injury action involving a collision between two skiers, plaintiff appeals by leave granted an order of the trial court granting defendant's motion for summary disposition of plaintiff's claim under the Ski Area Safety Act (SASA)[1] and denying plaintiff's motion to amend her complaint to add a count of reckless misconduct. We affirm the trial court's grant of summary disposition, but only because we are bound by a line of cases that has interpreted SASA to grant absolute immunity to ski area operators and skiers for injuries resulting from statutorily enumerated dangers, including a collision with another skier. *Kent v Alpine Valley Ski Area, Inc*, 240 Mich App 731; 613 NW2d 383 (2000); *McCormick v Go Forward Operating Ltd Partnership*, 235 Mich App 551; 599 NW2d 513 (1999); *Barr v Mt Brighton, Inc*, 215 Mich App 512; 546 NW2d 273 (1996); *Schmitz v Cannonsburg Skiing Corp,* 170 Mich App 692; 428 NW2d 742 (1988); *Grieb v Alpine Valley Ski Area, Inc*, 155 Mich App 484; 400 NW2d 653 (1986). This precedent requires a conclusion that defendant is entitled to immunity for the skiing collision, regardless of whether he violated his duty under SASA to ski safely,[2] as alleged by plaintiff.

While the cited cases involved claims against ski area operators rather than skiers, the holdings were based on statutory language applicable to both operators and skiers, and we are therefore constrained to reach the

---

[1] MCL 408.321 *et seq.*

[2] See MCL 408.342(1) (regulating the conduct of skiers in ski areas).

same result. Were we not bound by this precedent, we would follow the reasoning of *Dale v Beta-C, Inc*, 227 Mich App 57; 574 NW2d 697 (1997) *(Dale II)*, in which a conflict panel of this Court addressed analogous provisions under the Roller Skating Safety Act (RSSA),[3] and held that a skater assumes the risk of obvious and necessary dangers inherent in the sport of roller-skating, but does not assume the risk of an operator violating the prescribed duties under the act. *Dale II, supra* at 70. We therefore affirm the grant of summary disposition, but declare a conflict under MCR 7.215(J)(2), so that the question of absolute immunity under SASA may be more fully considered.

I. ISSUE

This case presents an issue of first impression: whether the assumption of risk provision of SASA, MCL 408.342(2), as a matter of law bars a skier injured in a collision with another skier from filing a claim against the other skier. We would hold that it does not.

SASA is a sport responsibility statute[4] specific to skiing. The act prescribes the duties of skiers and ski area operators, provides certain presumptions relative to liability for an injury or damage sustained by skiers, and provides for liability for damages that result from a violation of the act. 1962 PA 199. Because plaintiff's claim is based on defendant's alleged violation of his duties under the act, we would hold that plaintiff's

---

[3] MCL 445.1721 *et seq.*

[4] Many states have enacted "sport responsibility statutes" to provide for participant safety and to preclude lawsuits against persons providing specialized risky sport activities such as skiing, roller-skating, snowmobiling, sport shooting, and amusement rides. At least 25 states have adopted specialized statutes concerning skiing. Centner, *Tort liability for sports and recreational activities: Expanding statutory immunity for protected classes and activities*, 26 J Legis 1, 19 (2000).

claim is not barred as a matter of law and must be considered in the context of the duties and liabilities under the act. *Dale II*, *supra*.

## II. FACTS

Plaintiff filed this action after she was injured in a collision with defendant while skiing at Boyne Mountain ski resort on December 30, 2002. Plaintiff and defendant were skiing down the same run. Plaintiff was the "downhill" skier and defendant was the "uphill" skier.[5] According to plaintiff, at the time of the collision, she was making short, controlled slalom turns, moving ten to 12 feet laterally as she turned. The ski slope was wide open; there were no other skiers nearby. Plaintiff heard someone yell, "Watch out," and she was struck from behind and knocked down by defendant. She suffered fractures of her humerus and lumbar spine.

Defendant moved for summary disposition, arguing that plaintiff's claims were barred by SASA, MCL 408.342(2), which provides that skiers accept the risk of a collision with another skier. Alternatively, defendant argued that as coparticipants in a recreational sport, defendant owed plaintiff only a duty not to act recklessly, and plaintiff failed to show any evidence of recklessness by defendant. Plaintiff moved to amend her complaint to add a count of reckless misconduct. The trial court denied plaintiff's motion and granted summary disposition for defendant. The court agreed with defendant that plaintiff's claim was barred as a matter of law by the assumption of risk provisions of SASA.

---

[5] That is, defendant was at a higher point on the ski slope.

### III. STANDARD OF REVIEW

Defendant filed his motion for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), and the trial court decided the motion under those rules. "This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Where, as here, it is clear that the trial court looked beyond the pleadings, this Court will treat the motion as having been granted pursuant to MCR 2.116(C)(10). *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000).

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden, supra* at 120. The court must consider the affidavits, depositions, admissions, and other documentary evidence submitted by the parties and view this evidence in the light most favorable to the nonmoving party. *Id.* If the evidence fails to create a genuine issue of material fact, the moving party must be granted judgment as a matter of law. *Id.*

Questions of statutory construction are also reviewed de novo. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 62; 642 NW2d 663 (2002). "The issue regarding whether a particular set of circumstances falls within the risks and dangers enumerated in subsection 22(2) of the SASA is a question of law." *McGoldrick v Holiday Amusements, Inc*, 242 Mich App 286, 293; 618 NW2d 98 (2000).

### IV. ANALYSIS

Plaintiff argues that the trial court erred in granting defendant's motion for summary disposition on the basis of SASA. We agree and would reverse and remand

this case for further proceedings were we not bound by precedent holding, in effect, that SASA bars any action for injuries resulting from certain inherent dangers in skiing, including collisions with other skiers.

### A. LIABILITY UNDER SASA

In enacting SASA, the Legislature modified the common law of torts regarding recreational activities by establishing a statutory liability scheme specific to skiing. See *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 85 n 7; 597 NW2d 517 (1999). The scheme established by the Legislature grants immunity for dangers inherent in skiing "insofar as the dangers are obvious and necessary," MCL 408.342(2), but also imposes a duty on skiers to maintain reasonable control of their speed and course, MCL 408.342(1)(a), and expressly mandates liability for damages resulting from a skier's or an operator's violation of the act, MCL 408.344.

Section 22 of SASA, MCL 408.342, addresses ski areas and sets forth the duties of a skier and the acceptance of inherent dangers in skiing, for which a skier assumes the risk:

(1) While in a ski area, each skier shall do all of the following:

(a) Maintain reasonable control of his or her speed and course at all times.

(b) Stay clear of snow-grooming vehicles and equipment in the ski area.

(c) Heed all posted signs and warnings.

(d) Ski only in ski areas which are marked as open for skiing on the trail board described in section 6a(e).

(2) Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include,

but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.

Section 22(2) is commonly referred to as the SASA assumption of risk provision. See, e.g., *Kent, supra* at 740. Defendant asserts that this provision provides, in effect, that "[e]ach person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary," including "collisions . . . with other skiers . . . ." Defendant argued, and the trial court agreed, that pursuant to § 22(2), an injury resulting from a collision with another skier is an obvious and necessary danger of skiing and that defendant's actual conduct is irrelevant. Accordingly, defendant was entitled to immunity in this case on the basis of plaintiff's assumption of the risk of a collision.

However, MCL 408.342(1) concurrently provides, among other duties, that "each skier shall . . . [m]aintain reasonable control of his or her speed and course at all times" and "[h]eed all posted signs and warnings." Section 21 of SASA, addressing ski lifts, likewise provides:

A skier shall conduct himself or herself within the limits of his or her individual ability and shall not act or ski in a manner that may contribute to his or her injury or to the injury of any other person. A skier shall be the sole judge of his or her ability to negotiate a track, trail, or slope. [MCL 408.341(1).]

Further, SASA expressly provides recourse for a skier's violation of the act in § 24, MCL 408.344, which provides: "A skier or passenger who violates this act, or an

operator who violates this act shall be liable for that portion of the loss or damage resulting from that violation."

To read the language in § 22, concerning the assumption of risk, as an automatic bar to any claim based on a collision with another skier, regardless of the other skier's conduct, is to ignore, and render nugatory, the provisions of SASA that impose duties on skiers and provide recourse for a skier's violation of the act. We thus disagree that defendant's conduct is irrelevant.

In this case, plaintiff alleged that defendant violated SASA and that defendant's violations resulted in plaintiff's injuries. Under SASA, a skier accepts the dangers of skiing, e.g., collisions with other skiers, only "insofar as the dangers are obvious and necessary." If a skier is alleged to have violated the statutory duties that the Legislature imposed, it cannot be said that the risk of collision was "obvious and necessary." Accordingly, as explained earlier, we conclude that the statutory assumption of risk does not bar plaintiff's claim.

### B. PRECEDENT UNDER THE RSSA

In *Dale II,* a conflict panel of this Court addressed the question of absolute immunity under the RSSA, an act that parallels SASA in its construction and purpose.[6] The Court held that a skater assumes the risk of

---

[6] Although the RSSA contains provisions different from those found in SASA, the distinctions are not at issue in this case. See *Dale II, supra* at 67-68; *Barr, supra* at 518, 521 n 4. "The statutory clause outlining the assumption of risk that roller-skaters agree to accept when they participate in roller-skating, MCL 445.1725; MSA 18.485(5), is virtually identical to that found in the Ski Area Safety Act." *Barr, supra* at 518, citing *Skene, supra* at 6. However, whether a comparison of the two statutes is appropriate necessarily depends on the provisions at issue. "The acts deal with two separate and distinct sports, obviously giving rise to different concerns, and the language and the structure of the statutes are

obvious and necessary dangers inherent in the sport of roller-skating, but does not assume the risk of an operator violating the prescribed duties under the act. *Dale II, supra* at 70. The conflict panel reasoned that "[a]n integral feature of the RSSA is the balancing of risks assumed by the skater with the responsibilities of the operator." *Id.* at 66. Accordingly, the broad conclusion that an operator's behavior is irrelevant is contrary to the statutory scheme. *Id.*

We conclude that the same analysis properly applies to the liability of a skier under SASA. We therefore find the decision in *Dale II* instructive, if not controlling, on the issue whether the statutory assumption of risk bars plaintiff's claim in this case.

In *Dale II*, this Court addressed liability under the RSSA in deciding a conflict between *Skene v Fileccia*, 213 Mich App 1; 539 NW2d 531 (1995), and a decision of the earlier *Dale* panel, *Dale v Beta-C, Inc*, 223 Mich App 802; 566 NW2d 640 (1997) *(Dale I)*. The *Dale II* Court accepted *Skene* for the conclusion that collisions among roller skaters are obvious and necessary dangers assumed by a roller skater under § 5 of the RSSA, which contains the same assumption of risk provision as that at issue here.[7] *Dale II, supra* at 65. However, the *Dale II* Court rejected the notion advanced in *Skene* that an operator's behavior is irrelevant, stating:

> The *Skene* Court properly found that collisions among roller skaters are obvious and necessary dangers assumed by a roller skater pursuant to § 5 of the RSSA. The facts in

dissimilar enough, to warrant careful scrutiny before a comparison is made." *Dale II, supra* at 67 n 6; see also *McCormick, supra* at 556.

[7] Section 5 provides in relevant part: "Each person who participates in roller skating accepts the danger that inheres in that activity insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries that result from collisions with other roller skaters . . . ." MCL 445.1725.

*Skene* warranted the conclusion that the plaintiff's injuries were the result of an assumed risk inherent in the sport. However, although this result was appropriate in *Skene,* which involved *a simple collision* between roller skaters, we agree with the prior *Dale* panel that the *Skene* holding is overly broad and problematic when applied to more complicated circumstances such as the instant case, in which the plaintiff also alleges that defendant supplied defective skating equipment. As the prior *Dale* panel aptly noted, the effect of the *Skene* Court's conclusion that an operator's behavior is irrelevant if an injury occurs because of a collision "is to provide immunity to operators for virtually any suit brought by a skater. *If the Legislature intended such a result, it would not have included the limiting language in § 5, would not have set forth the duties in § 3, and, would not have included in § 6, an 'operator' among those who 'shall be liable' for damages resulting from violations of the act."* [*Dale II, supra* at 65-66, quoting *Dale I, supra* at 805 (emphasis added).]

The *Dale II* Court recognized that an integral feature of the RSSA is the balancing of risks and responsibilities:

An integral feature of the RSSA is the balancing of risks assumed by the skater with the responsibilities of the operator. Section 3 of the RSSA expressly states that operators are liable for failure to "maintain roller skating equipment . . . according to the safety standards [published in 1980 by the Roller Skating Rink Operators Association]."[5] Further, § 6 of the statute provides that an "operator who violates this act *shall be liable in a civil action for damages* for that portion of the loss or damage resulting from the violation." (Emphasis added.) Certainly, the inclusion of these sections in the statute indicates that the Legislature did not intend to provide absolute immunity to rink operators. However, the *Skene* Court found exactly that, thereby rendering § 3 and § 6 nugatory. We now overrule that portion of the *Skene* decision. [*Dale II, supra* at 66-67.]

[5] The standards provide in pertinent part that roller-skating supervisors must "[w]atch skates for bad stops, nails or other protrusions" and further require that "[s]kate rentals should be checked on a regular basis for good mechanical condition."

Particularly relevant to this case, the *Dale II* Court concluded:

> In order to preclude such an unintended result and to preserve the legislative purpose underlying the RSSA, the assumption of risk provision of § 5 must be read in conjunction with the duties of operators set forth in § 3 and the creation of civil liability for operators as set forth in § 6. Reconciliation of these provisions leads us to hold that a skater does not assume the risk of an operator violating the duties prescribed under the act. If a violation of § 3 of the RSSA is alleged and proved, then pursuant to § 6 the operator "who violates this act shall be liable in a civil action for damages for that portion of the loss or damage resulting from the violation." MCL § 445.1726; MSA 18.485(6). [*Dale II, supra* at 67.]

This analysis and conclusion also properly apply to SASA, which has a similar purpose and an analogous statutory scheme. And although *Dale II* addressed the statutory balancing of risks and responsibilities in the context of an operator under the RSSA, the same analysis applies with respect to a skier, who likewise has duties under SASA, MCL 408.341(1) and 408.342(1), and is liable for violations of the act, MCL 408.344.

#### C. CONFLICT BETWEEN *DALE II* AND SASA PRECEDENT

Recent cases have rejected the conflict panel's analysis in *Dale II* as inapplicable to SASA. *Kent, supra*; *McCormick, supra*. A careful reading of *Dale II*, how-

ever, convinces us that the rejection is unwarranted in this case. A comparison of the respective statutory provisions at issue in the RSSA and SASA reflects that they are identical in many respects: (1) the assumption of risk provision in each statute states that the sports participant accepts the dangers that inhere in that activity "insofar as the dangers are obvious and necessary," and that "[t]hose dangers include, but are not limited to" injuries that result from "collisions" "with other [skiers/rollerskaters]";[8] (2) each requires that a roller skater/skier "[m]aintain reasonable control of his or her speed and course at all times";[9] and each provides that a skier/skater or an operator "who violates this act shall be liable for that portion of the loss or damage resulting from" that violation.[10] Nonetheless, contrary to the analysis in *Dale II*, the SASA cases hold that the assumption of risk provision in § 22(2) is an absolute bar to a claim for injuries that result from the statutorily enumerated dangers.

Our review of precedent under SASA indicates that the incongruity between *Dale II* and cases under SASA stems from decisions that preceded the conflict panel decision in *Dale II*, and therefore adhered to the subsequently overruled view that SASA and the RSSA grant absolute immunity for the statutorily enumerated dangers. See *Barr, supra*; *Schmitz, supra*; *Grieb, supra*. These divergent views under the RSSA and SASA have continued because of reliance on the analyses in *Barr*, *Schmitz*, and *Grieb*, all of which preceded *Dale II*.

In *Barr*, Judge (now Justice) MARKMAN relied in part on the holding in *Skene* that the assumption of risk clause in the RSSA renders the reasonableness of the

---

[8] MCL 408.342(2) and MCL 445.1725.

[9] MCL 408.342(1)(a) and MCL 445.1724.

[10] MCL 408.344 and MCL 445.1726.

roller-skating rink operator's behavior irrelevant. *Id.* at 518-519. Justice MARKMAN concluded that likewise, in SASA, the assumption of risk clause was not conditioned on the compliance with other sections of the act. *Id.* at 519. However, the holding in *Skene* was subsequently rejected by the conflict panel in *Dale II*. Nonetheless, our courts have continued to adhere to the view that the dangers enumerated in SASA are obvious per se and necessary, and, therefore, any concomitant violation of SASA that results in injury is irrelevant.

Justice MARKMAN recognized the dilemma now presented by cases holding that the enumerated dangers, such as trees or collisions, are statutorily defined obvious and necessary dangers, although the statute suggests a comparative negligence analysis. *Id.* at 520-522.

> The act clearly and unambiguously provides that injury resulting from "trees" is an obvious and necessary danger of skiing. MCL 408.342(2); MSA 18.483(22)(2). We do not believe that the proximity of several trees, or trees with an unusual shape, creates a different risk that is not covered by the act.
>
> We do not suggest that every incident involving a tree necessarily falls under the assumption of risk clause of the act. For instance, there may be incidents involving a tree where a skier also has been subjected to dangers from which the risk of an injury is not assumed by the skier under the act, e.g., a skier's collision with a tree caused by the skier seeking to avoid improperly marked construction equipment located on a ski slope. MCL 408.326a(a); MSA 18.483(6a)(a). *At that point, a ski area operator's behavior and compliance with the act would not be irrelevant. . . .*[7]
>
> Contrary to plaintiff's assertion, there is no question of fact regarding whether the cluster of trees was an "obvious and necessary" danger. The Ski Area Safety Act explicitly provides that it is. This construction of the Ski Area Safety Act is consistent with the Legislature's intent of promoting safety, reducing ski-related litigation, and stabilizing the

economic conditions of the ski resort industry. *Grieb, supra* at 487, citing Senate Legislative Analysis, SB 49, Second Analysis, April 17, 1981.

---

[7] We distinguish this case from one, for example, where a beginning-level skier has skied down an "expert" slope because the slope has been improperly marked as a "beginner" slope and has collided with a tree. In such a case, the ski area operator's failure to comply with its duties under the act, MCL 408.326a(c); MSA 18.483(6a)(c), would not necessarily be irrelevant. Unlike the instant case, the ski area operator's failure to comply would relate to a danger, i.e., beginners skiing down "expert" slopes, from which the risk of injury would not be assumed by a skier under the act.

---

[*Barr, supra* at 522-523 (emphasis added).]

The rejection of *Dale II* as controlling analysis with respect to SASA has been reinforced by a factual distinction between *Dale I* and subsequent cases that have considered whether the analysis in *Dale II* applies to SASA. See, e.g., *McCormick, supra* at 555-556 (*Dale II* is inapplicable because the RSSA requires that rink operators comply with safety standards published by the rink operators association and SASA contains no similar provisions requiring compliance with American National Standard for Passenger Tramways [ANSI standards]); see also *McGoldrick, supra* at 291-292 (as in *McCormick, supra*, *Dale II* is inapplicable because SASA does not require compliance with ANSI standards).

The *McCormick* Court's consideration of *Dale II* addressed only limited aspects of the conflict panel decision in *Dale II*. The mere fact that the violation at issue in *Dale I* involved safety standards for operators that are not similarly referenced in SASA is beside the

point because the *Dale II* conflict pertained equally to the issues presented in *Skene, supra,* which involved a collision between skaters. *Dale II* rejected the notion espoused in *Skene* that an operator's behavior is irrelevant if an injury occurs because of a collision and overruled that portion of the *Skene* decision. *Dale II, supra* at 66-67. While we do not take issue with the result in *McCormick, supra,* or its conclusion with respect to the specific issue of safety standard violations, *id.* at 555, its rejection of the reasoning of *Dale II* as inapplicable to SASA has continued to be extended beyond any statutorily defensible bounds. See, e.g., *Kent, supra* at 743 ("when, as here, injuries occur as a result of any of the statutorily enumerated dangers, the reasonableness of the skier's or the operator's conduct is rendered irrelevant"); *McGoldrick, supra* at 294 (citing *McCormick* for the proposition that SASA places no restrictions on immunity for collisions with other skiers); but see *Kent, supra* at 744 n 5 (questioning the analysis in *McCormick* and noting that "SASA arguably *does* provide for an exception to immunity for violation of [ANSI standards] . . . .")

Despite Justice MARKMAN's acknowledgment in *Barr* of limitations on immunity under SASA, and the conflict analysis in *Dale II,* subsequent decisions of this Court have not qualified their findings of absolute immunity for enumerated dangers under SASA. That is, they have continued to hold that because SASA enumerates dangers inherent in the sport of skiing and provides that a skier assumes any associated risk of injury from these dangers, the reasonableness of the ski area operator's conduct is irrelevant. *Kent, supra* at 743. Further, the statute does not condition immunity on a ski area operator's compliance with the duties under SASA. *Barr, supra* at 519; see also *Kent, supra* at 740 (citing the analysis in *Barr*).

In view of this SASA precedent, and given that SASA preempts the common law, we are compelled to conclude that with regard to actions premised on the inherent dangers in skiing, such as collisions, injured parties face an absolute bar to recovery even if the conduct causing the injury is reckless or intentional or the direct result of a statutorily imposed violation of a duty of safety. This result does not comport with *Dale II* or the stated purpose of SASA, which is " 'to provide for the safety of skiers, spectators, and the public using ski areas.' " *Barr, supra* at 515, quoting 1962 PA 199, amended by 1981 PA 86, § 1.

### D. SASA IS SUBJECT TO INTERPRETATION

At the core of the divergent views of SASA and the RSSA is the language of the assumption of risk provision, which grants immunity for dangers that are obvious and necessary. As stated above, the SASA assumption of risk provision states:

> Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment. [MCL 408.342(2).][11]

---

[11] As noted, the corresponding RSSA assumption of risk provision is found in MCL 445.1725: "Each person who participates in roller skating accepts the danger that inheres in that activity insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries that result from collisions with other roller skaters or other spectators, injuries that result from falls, and injuries which involve objects or artificial structures properly within the intended travel of the

Our courts have read this language to mean that the statutorily enumerated dangers are by their mere mention "obvious and necessary," which under § 22(2) precludes any action based on injuries from any statutorily enumerated danger. See, e.g., *Kent, supra* at 743 ("The statute says that collisions with ski lift towers and their components constitute a danger that is obvious and necessary and that the skier accepts."); *McCormick, supra* at 554 ("The statute says that collision with another skier comes within the dangers that are necessary and obvious.").

However, § 22(2) may also be read to mean that a skier accepts the risk of the enumerated dangers, but only insofar as the dangers are necessary and obvious. This is the reading implicit in *Dale II*, which noted that the *Skene* Court's finding, that collisions among roller skaters are obvious and necessary dangers assumed by a roller skater, was appropriate in *Skene*, which involved a simple collision, but was overly broad and problematic when applied to more complicated circumstances.

Recently, Justice TAYLOR, writing for the majority in *Anderson v Pine Knob Ski Resort, Inc*, 469 Mich 20; 664 NW2d 756 (2003), commented on the Legislature's intent in enacting SASA, and more specifically, § 22:

> As can be seen, this act specified that skiers have the responsibility to ski under control, as well as to heed signs and warnings and avoid snow-grooming vehicles and equipment. Moreover, the act continued that, by skiing, skiers are held to have accepted certain types of risks from dangers that inhere in the sport as long as those dangers are "obvious and necessary." [MCL 408.342.]

roller skater which are not otherwise attributable to the operator's breach of his or her common law duties."

In determining if the potential of collision with a timing shack is a danger inherent in the sport and, if it is, whether it was a danger that was obvious and necessary, we must study the structure of the statute and the language employed by the legislators in MCL 408.342(2).

This subsection identifies two types of dangers inherent in the sport. The first can usefully be described as natural hazards and the second as unnatural hazards. The natural hazards to which the act refers without limit are "variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris . . . ." MCL 408.342(2). The unnatural hazards include "collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment." MCL 408.342(2). For both types of hazards, the examples are clearly only examples because the Legislature specifically has indicated that the covered dangers are not limited to those expressly described. The examples are employed to give the reader guidance about what other risks are held to be assumed by the skier. We undertake this analysis by determining what is common to the examples. This exercise is what legal scholars describe as discerning meaning by use of the doctrine of ejusdem generis, and *leads us to conclude that the commonality in the hazards is that they all inhere in the sport of skiing and, as long as they are obvious and necessary to the sport, there is immunity from suit. [Anderson, supra* at 24-25 (emphasis added).]

Justice TAYLOR's analysis of MCL 408.342(2) would seem to support the conclusion that the examples given by the Legislature are dangers that inhere in skiing, and that *as long as* they are obvious and necessary, there is immunity from suit. That is, the examples are not in and of themselves necessary and obvious. Instead, the language of § 22(2) requires a two-part inquiry to determine whether the immunity provision of SASA may be invoked: (1) does the danger inhere in the

sport of skiing; and (2) was the particular danger that resulted in injury necessary and obvious?

We do not find such an analysis unworkable in practice. The Legislature has deemed the statutorily listed dangers to be inherent in skiing, and, in most instances, these dangers will be necessary and obvious, thereby justifying immunity from suit as a matter of law, e.g., as in a simple collision between skiers, see *Dale II, supra* at 65. However, in certain unique circumstances involving egregious conduct on the part of a skier or operator that violates a duty imposed under SASA, and results in the injury or death of a skier, there may be a question whether the particular danger was necessary and obvious, in which case the determination must be made by the fact-finder. See *Dillworth v Gambardella*, 776 F Supp 170 (D Vt 1991), aff'd 970 F2d 1113 (CA 2, 1992) (question whether a collision was "necessary and obvious" was submitted to the fact-finder under Vermont law, which has the same assumption of risk language in its sport responsibility law as in SASA, but without enumerated dangers).[12] In *Dillworth*, the Court explained the doctrine of assumption of risk in the context of skiing:

> In pertinent part, Section 1037 [Vermont sports injury statute, 12 VSA 1037] provides that "a person who takes part in any sport accepts as a matter of law the dangers that inhere therein insofar as they are obvious and necessary." The statute incorporates the common law doctrine of assumption of risk which previously had been applied to cases involving the liability of ski area operators. This rule holds that when a risk or danger is obvious such that it is widely known by reasonable people under the particular

---

[12] In *Dillworth*, the court instructed the jury that it must determine whether the risk of collision between skiers was obvious and necessary given the facts of the case. The jury found in favor of the defendant. *Dillworth, supra*, 776 F Supp 171, 173.

circumstances and necessary such that it is impossible or unreasonably difficult or expensive to eliminate, the person engaged in the dangerous activity assumes those obvious and necessary risks. Concomitantly, there is no duty on the part of others to warn about or extinguish those risks. Thus, by statute or common law rule, ski area operators have traditionally been exempted from liability for injuries to skiers resulting from obvious and necessary risks. [*Dillworth, supra,* 776 F Supp 172 (citation omitted).]

Contrary to previous analyses of SASA, we find that its plain and unambiguous language does not require a conclusion that the enumerated dangers in MCL 408.342(2) are perforce "necessary and obvious." An equally reasonable conclusion can be drawn that the enumerated dangers are examples of inherent dangers, which are accepted risks only "*insofar as* the dangers are obvious and necessary." Otherwise, the Legislature would have specified that the examples were statutorily deemed "obvious and necessary" by stating:

Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. [*Obvious and necessary*] dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.

The courts may not presume that the Legislature intended the enumerated dangers as obvious and necessary dangers, rather than simply inherent dangers. Nothing may be read into a clear statute that is not within the manifest intent of the Legislature as derived from the language of the statute itself. *Roberts, supra* at 63.

If the Legislature had intended to provide individual skiers with absolute immunity from liability, the Legislature presumably would have drafted the statute accordingly. Instead, the Legislature enacted MCL 408.341 and MCL 408.342(1), which enumerate the statutory duties of individual skiers, and MCL 408.344, which provides individual liability for a breach of those duties. To hold that MCL 408.342 provides absolute immunity for individual skiers would be reading a provision into the statute that clearly is not there. *Roberts, supra* at 63. Therefore, we conclude that MCL 408.342(2) does not provide immunity to individual skiers who violate MCL 408.342(1).

Moreover, MCL 408.344 provides that a skier who violates his or her duties under the act "shall be liable for that portion of the loss or damage resulting from that violation." If the assumption of risk provision, MCL 408.342(2), provides absolute immunity for individual skiers under any circumstance, MCL 408.344, MCL 408.341, and MCL 408.342(1) would be rendered meaningless. It is fundamental that this Court must avoid a construction that would render any part of a statute surplusage or nugatory. *Bageris v Brandon Twp*, 264 Mich App 156, 162; 691 NW2d 459 (2004).

The purpose of SASA is to promote safety, reduce litigation, and stabilize the economic conditions in the ski resort industry. *Grieb, supra* at 487, citing Senate Legislative Analysis, SB 49, Second Analysis, April 17, 1981. The *Grieb* Court explained:

> The Legislature perceived a problem with respect to the inherent dangers of skiing and the need for promoting safety, coupled with the uncertain and potentially enormous ski area operators' liability. Given these competing interests, the Legislature decided to establish rules in order to regulate the ski operators and to set out ski operators' and skiers' responsibilities in the area of safety. MCL

408.340 *et seq.;* MSA 18.483(20) *et seq.* As part of this reform, the Legislature has decided that all skiers assume the obvious and necessary dangers of skiing. This is a rational solution for limiting ski area operators' liability and promoting safety. [*Grieb, supra* at 488-489.]

Allowing a plaintiff to pursue an action for a defendant's alleged statutory violations furthers the purposes of SASA. The potential for individual liability encourages individual skiers to ski safely to avoid injuring other skiers and does not compromise the limits on ski area operators' liability that SASA was intended to create. *See id.* at 488-490.

Given the above-expressed concerns with previous interpretations of SASA, and the incongruence between those interpretations and the conflict panel analysis and holding in *Dale II*, we urge further consideration of the question of absolute immunity under SASA.

### E. CONCLUSION UNDER SASA

Viewing the evidence in a light most favorable to plaintiff, *Maiden, supra* at 120, we would find that plaintiff has set forth sufficient evidence to create a genuine issue of material fact with respect to whether defendant breached his duties under SASA. However, in view of established precedent, we are constrained to find no error in the trial court's grant of defendant's motion for summary disposition. MCR 2.116(C)(10).

### V. RECKLESS CONDUCT CLAIM

We also are constrained to reject plaintiff's alternative argument that the trial court erred in denying plaintiff's motion to amend her complaint to allege a claim that defendant's conduct was reckless. Plaintiff's sole recourse in this case is under SASA. See *Ritchie-*

*Gamester, supra* at 85 n 7; see also *Dale II, supra* at 70 (a participant's sole recourse against a roller-skating rink operator is pursuant to the RSSA). The express duties and standards set forth in the act apply, rather than common law standards of negligence or recklessness. "[T]he common law no longer controls once the Legislature enacts statutes that preempt it," as in the case of SASA. *Anderson, supra* at 27 n 2. Because SASA provides plaintiff's sole recourse for the injuries sustained in this case, the common-law standard of recklessness is irrelevant. We find no error in the trial court's denial of plaintiff's motion to amend her complaint.

### VI. CONCLUSION

We recognize that given the everyday dangers inherent in skiing, the bar to suit has been set high under SASA. We do not speculate concerning what conduct leading to a collision constitutes a danger that is unnecessary and not obvious, such that a skier does not accept the risk by merely engaging in skiing. Our only conclusion is that, contrary to existing case law, the bar is not absolute. We urge the courts—and if necessary, the Legislature—to reconcile the dilemma presented by established precedent under SASA with regard to absolute immunity.

Affirmed.